PHILIP M. GRAFF, Administrator, *vs.* DAVID BUCHANAN and another.

June 3, 1891.

**Contract—Offer—Acceptance.**—A letter construed to be merely an offer which required acceptance, and notice of acceptance, before it could constitute an agreement.

Appeal by plaintiff from an order of the district court for St. Louis county, *Stearns*, J., presiding, setting aside a verdict of $2,000 in his favor, and granting a new trial.

*White, Reynolds & Schmidt*, for appellant.

*Wm. B. Phelps*, for respondents.

GILFILLAN, C. J.   Charles Graff, in 1887, owned the east half of a lot in Duluth, and E. E. Coe owned the other half.   September 3, 1887, Coe wrote to Graff this letter: "Mr. Graff—Dear Sir: Your letter in reference to building at hand.   I haven't the means to build at present.   I wish I had.   I have only about $5,000 in cash or available funds that I could use.   I am trying to sell real estate here to invest proceeds west.   If you will buy my lot to build on right away, you need not pay anything on it, and I will lend you what money I have, and more, if I could get it.   I have great faith in Duluth.   Or you can build a party-wall ½ on my lot, sufficient thickness for a six-story building in time, and if stairway can be extended out so as to be owned in common, or not, as you think best, I will bind myself and assigns to pay ½ of the cost at the time a building is erected on my lot.   There should be a basement to Michigan-St. store.   I understand there is 12 feet difference in grade of Michigan and Superior St.   Yours, E. E. COE, JR."   It does not appear that any further communication took place between Graff and Coe.   In 1889 Graff constructed on his half-lot a building, the side wall of which, capable of sustaining a six-story building, was placed one-half the thickness on the east and one-half on the west half of the lot.   Coe, who resided in New York, never knew of this.   After the building was erected, Coe conveyed his half of the lot to the defendant Buchanan, and he conveyed an undivided half of it to the de-

fendant Blanchard, and the defendants erected a building on their half of the lot, using for the purpose the half of the wall erected by Graff that stood on their land. September 29, 1889, which was before the defendants began to use the wall, Graff died, and his half of the lot descended to Peter Graff, who conveyed it to Edmund Graff. Plaintiff sues as administrator of Charles Graff to recover one-half the cost or value of the wall. The court below set aside a verdict for plaintiff, and from that order the appeal is taken.

If conceded that the wall in question was a party-wall, so that an obligation on the part of defendants to pay one-half the cost or value arose upon their using the wall, the question suggests itself, to whom did the obligation accrue,—to the administrator of Charles Graff, who did not own the wall when it accrued, or to Peter or Edmund Graff, the then owner? The question, however, is not raised, and, as its decision is not necessary to the determination of the appeal, we will not consider it.

The action is not to enforce specific performance of an agreement to enter into a party-wall contract. The necessary parties to such an action are not before the court. The owner of the east half of the lot is as necessary a party to such an action as are the owners of the other half. A party-wall contract creates cross or reciprocal easements, and, of course, no easement in the land of Edmund Graff can be created nor established in an action to which he is not a party. The action is brought on the theory of an existing party-wall contract, creating and defining the rights and obligations of the respective parties. The evidence utterly fails to show such a contract. An owner cannot create a party-wall, nor a party-wall contract, merely by building his wall half the thickness on his own land, and half on the land of the adjoining owner. If one, without a contract, so construct his wall, he will thereby acquire no easement in the adjoining land, and will impose no obligation on the owner of it. The half of the wall so resting on the adjoining land will belong to the owner of the latter, as a part of his land, and he may use that half of the wall as his own, without incurring any obligation. Otherwise he would have to abandon that part of his land on which the half of the wall rests, or submit to an obligation imposed on him without his consent. The letter

of Coe to Graff, even though acted on by the latter, is not a contract of any kind, nor is it an agreement to enter into a contract. At most, it is but an alternative offer,—an offer to sell, or to consent to, or contract for, a party-wall. If the terms of each branch of the offer were sufficiently explicit to constitute an agreement if accepted by Graff, acceptance by the latter, expressing which he accepted, and notice within a reasonable time to Coe, so as to create mutuality, was necessary. No such notice was shown. Conceding that Graff might accept the offer relating to the party-wall, after the lapse of two years, (*prima facie* an unreasonable time,) merely by going on to build, yet notice to Coe was necessary.

Order affirmed.